0816

Shirley M. WOODSIDE, Appellant-Respondent v. Archie G. WOODSIDE, Jr., Respondent-Appellant. Shirley M. WOODSIDE, Respondent v. Archie George WOODSIDE, Jr., Appellant. Shirley McRoberts WOODSIDE, Appellant v. Archie George WOODSIDE, Respondent.

(350 S. E. (2d) 407)

Court of Appeals

*Edmund H. Monteith,* of *Monteith & Monteith,* Columbia, *for appellant-respondent.*

*Robert L. Hallman,* Columbia, *for respondent-appellant.*

Heard Sept. 16, 1986.

Decided Nov. 3, 1986.

CURETON, Judge:

This divorce action involves three appeals. Both parties

appeal a 1984 divorce decree with respect to alimony, child support, equitable distribution and attorney fees. Both parties petitioned the Supreme Court for supersedeas. The Court refused supersedeas, but remanded the case to the family court to address the matter of mortgage payments during the pendency of the appeal. On remand the family court issued its order which was in turn appealed by the husband. The third appeal is brought by the wife upon refusal of the family court to hold the husband in contempt of court for failure to pay attorney fees, alimony, and his share of mortgage payments during this appeal. We affirm in part, reverse in part and remand.

The parties separated in 1983 after nineteen years of marriage. They have three children, one of whom is emancipated. The wife is 43 years of age and the husband is 42. Both parties are well educated. The husband earned a Ph.D. degree from Pennsylvania State University and the wife an M.A. degree from the same institution.

The parties enjoyed a high standard of living. At the time of the divorce hearing, the husband was a full professor at the University of South Carolina. He also earned other income from conducting seminars, writing books, and operating a consulting firm through a close corporation called ARC Consultants, Inc. The wife taught at the University of South Carolina from 1975 until 1983.

The wife was awarded a divorce on the ground of adultery. The husband admitted to an adulterous relationship with one of his students. The wife, however, does not appear to have been blameless in the marital breakup. She admitted that she had been suggesting a divorce for five years.

I.
ALIMONY

The trial judge ordered the husband to pay the wife $600.00 per month as permanent alimony and $600.00 per month for five years as rehabilitative alimony. Both parties concede that it was improper to award rehabilitative alimony. We therefore reverse that award.

The wife argues that the permanent alimony award was inadequate, while the husband argues it was excessive. We agree with the wife, and find the $600.00 per month permanent alimony award to be inadequate.

The wife earned over $18,000.00 as an instructor at the University of South Carolina in 1982. The trial judge found that she had a potential to earn $18,000.00 per year. Her net monthly income was only $545.00 at the time of the divorce hearing. The judge found that she was not earning at her capacity. According to the husband's financial declaration and Federal tax return, his 1983 gross earnings were $85,000.00. The wife disputes the husband's represented earnings and instead asserts that his earnings were closer to $115,000.00. The trial judge found that the husband's earned income was $85,000.00 in 1983 from three jobs, but concluded that he could not continue that pace for long.

The real disagreement the parties have about the husband's income stems from the fact that he operates his consulting firm through a corporation called ARC Consultants, Inc., of which he owns a ten percent stock interest. The remainder of the stock is owned by the parties' children. The wife claims that the corporation's income should be constructively allocated to the husband. To support this contention, the wife introduced the testimony of a certified public accountant. When asked on cross examination why he would disregard the corporate structure and allocate its income to the husband, the CPA replied that since the husband was the operator of the consulting business, "he had some flexibility as to where" he placed the earnings of the firm. The wife's attorney argued during oral argument that the husband also used some of the corporation's assets personally. The corporate form may be disregarded only where equity requires the action to assist a third party. *Sturkie v. Sifly*, 280 S. C. 453, 313 S. E. (2d) 316 (Ct. App. 1984). The party asserting that the corporate entity should be disregarded has the burden of proof. *Id.* We have reviewed the record and are unable to find a sufficient basis for disregarding the corporate structure and constructively allocating its income to the husband.

The wife argues next that because the trial judge found that the husband would not be able to continue to work at three jobs for very long, he necessarily anticipated a change of circumstances on the husband's part which was improper. The husband testified without objection that he could not continue his present "pace." The judge

obviously believed this testimony. Therefore, the record supports the trial judge's finding that the husband could not continue his three jobs. Aside from the trial judge's one reference to the husband having to lessen his "pace," there is no other indication in the order that the amount of support is based on a lesser anticipated income for the husband. We therefore reject this argument.

The trial judge found that while the wife was awarded a divorce on the grounds of adultery, "the facts of this case are not sufficient to serve as a justification for substantially increasing the alimony award." The wife argues that the husband's fault should have been considered in the alimony award. In making an alimony award the court should consider the conduct of the parties. *Lide v. Lide*, 277 S. C. 155, 283 S. E. (2d) 832 (1981). The trial judge states in his order that he considered the *Lide* factors that must be reviewed and determined that the husband's conduct did not justify a substantial increase in the alimony award. Where, as here, there is no evidence that the husband's adultery contributed to the marital break-up, we find no abuse of discretion on the part of the trial judge in not weighing heavily the husband's fault.

The wife prayed in her complaint for the use of the marital home.[1] The court did not explicitly rule upon her request, but ordered the house sold and the proceeds divided. Until the house was sold each party was ordered to pay one-half of the mortgage payment. The wife argues that the trial judge committed error in requiring her to pay one-half of the mortgage payment since she was awarded only a one-fourth interest in the marital home. By so doing, she claims that one-half of her portion of the mortgage payment goes to preserve the husband's three-fourths interest in the property. While such would be true if the house were left vacant or rented for a sum insufficient to make the mortgage payment, here the wife had the use of the home during the pendency of the appeal. We see no abuse of discretion in requiring her to pay a disproportionate share of the mortgage payment to account for the value of her use of the property.

---

[1] It is not clear whether the wife seeks use of the home as an incident of child support, as an element of alimony, or both.

We remand to the trial court the issue of alimony with instructions to award the wife a proper amount of permanent periodic alimony. *Voelker v. Hillcock*, 288 S. C. 622, 344 S. E. (2d) 177 (Ct. App. 1986). We leave to the sound discretion of the trial judge the amount to be awarded, but note that under the circumstances of this case, $600.00 per month is inadequate.

## II.
## CHILD SUPPORT

The parties' two unemanicipated daughters were born in 1968 and 1971. The judge ordered the husband to pay a total of $600.00 per month child support, maintain medical and dental insurance on them, and pay half of their medical and dental expenses not covered by insurance. The wife contends that the child support award is insufficient because it will reduce the children's standard of living and that the use of the home as an incident of child support should have been considered by the trial judge. The husband argues that the amount awarded is excessive in view of the almost equal division of marital property, and also because he cannot afford it.

The matter of how much child support to award in a ■■ case is addressed to the sound discretion of the trial judge whose decision will not be disturbed absent an abuse of discretion. *Bradley v. Bradley*, 285 S. C. 170, 328 S. E. (2d) 647 (Ct. App. 1985). In determining the amount of support to award, the court should consider both parent's ability to support the children and the needs of the children. *Casey v. Casey*, 289 S. C. 462, 346 S. E. (2d) 726 (Ct. App. 1986). Further, the amount of the award should, to the extent possible, permit the children to continue to live at the standard of living to which they have become accustomed. *Id.* Upon consideration of these factors, we find no abuse of discretion. Likewise, we see no abuse of discretion in the judge's refusal to award occupancy of the home as an element of child support. The trial judge found that the mortgage payments were extraordinarily high and it would be a burden on the parties to have to continue to make the payments. There is substantial support for this finding.

Finally, the husband argues that the family court ■ committed reversible error in failing to consider the

tax ramifications of the child support award. Because the tax laws have changed to permit the custodial parent to claim a child as his or her dependent irrespective of the amount of support furnished the child, he asserts that the court should have required the wife to waive her right to claim the children as dependents and execute the IRS documents evidencing the waiver. We see nowhere in the record that this was requested of the trial court. Moreover, while the husband claims that he alone fully supports the children, the record does not bear him out. We hold that there was no abuse of discretion in the court's failure to provide that the children would be the husband's dependents for tax purposes.

## III.
## ATTORNEY FEES

The wife incurred attorney fees of $10,367.50, $5,466.50 of which she had paid prior to trial leaving a balance of $4,901.00. The trial judge ordered the husband to pay $3,000.00 of this sum. The wife asserts this is not enough; the husband says it is too much. The family court found that the wife's attorney had earned the $10,367.50 in fees and lauded his efforts saying that he had "demonstrated in this action why he enjoys an excellent reputation among the bar and bench." The trial judge then concluded, without explanation, that the husband should be required to contribute $3,000.00 toward the wife's attorney fees. In addition to the professional standing of the wife's counsel, the trial judge was required to consider the other factors set out in *Nienow v. Nienow,* 268 S. C. 161, 232 S. E. (2d) 504 (1977) and *Atkinson v. Atkinson,* 279 S. C. 454, 309 S. E. (2d) 14 (Ct. App. 1983). There is no indication that the trial judge considered these other factors. Accordingly we remand this issue to the family court pursuant to Family Court Rule 27(C) to make specific findings regarding these factors and to enter an appropriate award.

## IV.
## EQUITABLE DISTRIBUTION

Both parties take issue with the equitable distribution award. The wife claims that the award was inadequate because the trial judge did not: (1) give her one-half of the

marital property as he stated in his order; (2) consider the fact that she had foregone career opportunities; (3) consider the husband's marital misconduct; (4) include the husband's retirement account as marital property; (5) include the assets of ARC Consultants, Inc. in the marital estate; and (6) include in her marital contribution family gifts totaling over $18,000.00. The husband's principal argument is that while the trial judge found that the wife's total direct and indirect contributions to the accumulation of the marital estate were twenty-five percent, he nonetheless awarded her forty-six percent of the marital property. He further contends that the award is excessive because the wife squandered over $73,000.00 in marital assets during a four month period prior to and immediately following the separation of the parties and the trial court did not consider this in making its award.

The wife first argues that the trial court erred in not ▮ enhancing her equitable distribution award because of the husband's fault. We find no indication in the divorce decree that the trial judge considered the fault of the husband in the equitable distribution award. This court stated in the case of *Rogers v. Rogers*, 280 S. C. 205, 207, 311 S. E. (2d) 743, 745 (Ct. App. 1984) that the "court may also consider who was at fault in causing a divorce and, while the circumstance of fault is not controlling and does not justify a severe penalty, it has persuasive force." Expanding on the language of *Rogers*, we believe that the conduct factor becomes important in equitable distribution when the conduct of one party to the marriage is such that it throws upon the other party marital burdens beyond the norms to be expected in the marital relationship. As stated in the case of *Bannen v. Bannen*, 286 S. C. 24, 331 S. E. (2d) 379 (Ct. App. 1985), marriage is an economic partnership to which both spouses contribute. When the conduct of one of the parties causes the other party to assume more than his or her share of the partnership load, it is appropriate that such misconduct should affect the distribution of the property of the marriage. *See Burtscher v. Burtscher*, 563 S. W. (2d) 526 (Mo. Ct. App. 1978). Our review of the record amply demonstrates that the husband's misconduct neither caused the dissolution of the marriage nor caused the wife to assume additional burdens during the marriage. We find no error in the failure of the trial judge to consider the fault of the husband.

We likewise see no merit to the wife's argument that the husband's retirement account should have been characterized as marital property. A careful reading of the divorce decree indicates that although the trial judge awarded each party their respective retirement accounts as part of their shares of the marital estate, he also included both parties' retirement accounts in the marital estate.

The wife next argues that the entire value of ARC Consultants, Inc. (not just the husband's ten percent interest) should be designated marital property. The corporation was established as a tax sheltering device, a mechanism to adopt a medical reimbursement plan for the family, and a device to provide a fund for the children's college expenses. At oral argument, the husband's attorney indicated the corporation is now inactive and there is no reason why it should be liquidated and its assets divided, provided the division considers the tax aspects of the liquidation. We decline to accept this invitation to divide the entire assets of the corporation because the children appear to have vested rights to ninety percent of the assets of the corporation. We remand this issue for a determination of the children's interest in the corporation and whether liquidation of it would prejudice their rights.

The wife also argues that the trial judge failed to give her credit for more than $18,000.00 given by her family to the marriage. We find no exception addressing this issue. The absence of an exception precludes our review of the issue. *Evans v. Bruce*, 245 S. C. 42, 138 S. E. (2d) 643 (1964).

Regarding the amount of the marital estate awarded the wife, the wife first argues that it was error for the trial judge to find that she was entitled to one-half of the marital estate, yet not award her that amount of property, citing *Rampey v. Rampey*, 286 S. C. 153, 332 S. E. (2d) 213 (Ct. App. 1985). This contention is premised upon a finding by the trial court "that following the equitable division of assets set forth hereinafter, that both parties will have basically the same financial assets." We do not view the finding to entitle the wife to an award of one-half of the marital assets, but to be simply an observation by the judge.

The wife's final argument is that the trial judge failed to consider the value of her foregone career opportunities to the accumulation of the marital estate. We agree. While the court states in its conclusions that

it has "carefully considered the factor of foregone opportunities of either party," it makes no finding on the matter. Both parties presented expert witnesses who testified to the value of the wife's direct and indirect contributions. The wife's expert testified her total contributions to the marital estate were thirty-seven percent while the husband's expert testified to twenty-three percent. The court found that the husband made direct and indirect contributions of seventy-five percent and the wife twenty-five percent. While the interruption of personal careers and educational opportunities may be a factor in an equitable distribution award, *Campbell v. Campbell*, 202 Neb. 575, 276 N. W. (2d) 220 (1979); *Matter of Marriage of Browning*, 28 Or. App. 563, 559 P. (2d) 1314 (1977), the court made no finding that the wife was entitled to an enhancement of her award by reason of her foregone career opportunities, but awarded the wife approximately forty-six percent of the marital property. Just as it was error in *Rampey* for the court to award the wife less property than it found she was entitled to, it is also error to award more than she is entitled to. We therefore remand this issue for a determination of whether the wife is entitled to an enhancement of her award because of foregone career opportunities.

Finally, the husband argues that the wife squandered over $73,000.00 in marital assets during the four month period immediately preceding and following the couple's separation and should be required to reimburse him for seventy-five percent of that sum. The wife denies that any amount was squandered and claims that the amount of assets in question is around $30,000.00. The record is inadequate for this court to determine what sums were used by the wife during this period. It is clear that substantial sums were spent but it is also clear that the husband paid no support during this period. Moreover, the record shows that over $8,000.00 of these funds were paid into the wife's retirement account which has been included as a marital asset. Further, some of the funds went to buy furniture and stocks which were also included as marital property. The husband has the burden of presenting an adequate record for review of this issue. *Dargan v. Metropolitan Properties, Inc.*, 243 S. C. 324, 133 S. E. (2d) 821 (1963). Because he has failed to do so, we find no abuse of discretion on the part of the family court in failing to provide for reimbursement.

## V.
## MORTGAGE PAYMENTS DURING APPEAL

After entry of the divorce decree, both parties requested that portions of the Decree be superseded and alternate provisions made by the South Carolina Supreme Court. The Court rejected both applications, but granted the wife's motion to remand. On remand, the husband took the position that because the family court ordered the house sold and the wife had refused to place the house for sale, he should not be required to pay his one-half of the mortgage payments. The wife's position was that the appeal stayed the order of sale. The trial judge agreed with the wife. He further ruled that "since the Decree did not make the Respondent's (husband's) mortgage obligations contingent on the sale being in process, the Respondent still has the duty to help with the payments." The judge then ordered the husband to pay three-fourths of the mortgage payments until his arrearage was eliminated. The husband appeals this order.

The husband argues first that having to pay one-half of the mortgage payments during the pendency of the appeal would be inequitable and would result in a hardship; and secondly, permitting the wife to remain in the house during the appeal amounts to the granting of exclusive use by the wife without the court making a finding that there was a compelling reason to do so as stated in *Thompson v. Brunson*, 283 S. C. 221, 321 S. E. (2d) 622 (Ct. App. 1984).

The order of remand from the Supreme Court does not contain provisions as to what was remanded. It simply states "Motion to remand granted." However, the Statement of the Case indicates that on remand the family court had before it only the issue of whether the husband should be required to make mortgage payments during the appeal. The trial judge properly held that the appeal stayed the equitable division award, including the order to sell the house. *Chris v. Chris*, 287 S. C. 161, 337 S. E. (2d) 209 (1985). The trial judge was also correct that the divorce decree did not make the husband's contribution to the mortgage payment dependent upon an active effort on the wife's part to sell the house. Moreover, as we read *Chris*, an appeal by either party of the equitable distribution award stayed the award. Since the husband also appealed the award, he can hardly be heard to complain that the wife's appeal or the order of sale

has caused a hardship to him. Finding no abuse of discretion, this aspect of the order of the trial judge is affirmed.

## VI.
### THIRD APPEAL OF HUSBAND

In late 1985, the wife filed three petitions in the family court alleging that the husband had not, pursuant to previous orders, paid: (1) his share of mortgage payments; (2) alimony and medical bills; and (3) attorney fees. She asked that he be held in contempt of court. The trial court ruled that: (1) the order requiring the husband to make mortgage payments during the appeal was stayed by the appeals, inasmuch as the mortgage payments were not in the nature of support; (2) payment of attorney fees was stayed by the appeal; and (3) although the wife had presented a prima facie case of contempt on the matter of alimony, the husband had proven his failure to pay was not willful, and thus he would not hold him in contempt. The court did not address the matter of the medical bills.

We agree with the trial court that the appeals stayed the provisions of the decree regarding the mortgage payments. Since the decree required that the house be sold, it is apparent that the provision for payment of the mortgage was intended to preserve the property and not provide support to the wife. We therefore hold that this provision was automatically stayed by the appeals. Rule 41, Section 1(A), Rules of Practice in the Supreme Court of South Carolina.

We also agree with the trial court that the provision for attorney fees was stayed by the appeal. Supreme Court Rule 41, Section 1(A) provides that subject to the exceptions listed in Section 1(B), every appeal taken to the Supreme Court shall automatically operate as a stay of proceedings in the court below. Nothing in Section 1(B) expressly precludes attorney fees from the operation of the general rule stated in Section 1(A). Arguably, however, attorney fees are money judgments and are excepted under provisions of Section 1(B)(1). Historically, in this state an order for attorney fees has not been treated as a judgment that can be executed upon until it has at least been settled on appeal. Until then, it is more in the nature of a disburse-

ment. Our study of Sections 14-21-40, 20-3-120, 20-3-125, 20-3-130, and 20-3-145, Code of Laws of South Carolina, 1976 leads us to this conclusion.

Attorney fees in divorce actions ordinarily mean the money necessary to enable a spouse to carry on or defend the matrimonial action, and are awarded to insure the spouse an efficient preparation of the case and a fair and impartial trial. *Keena v. Keena*, 245 So. (2d) 665 (Fla. App. 1971). Under our divorce statute, attorney fees are termed "suit money." Section 20-3-120. Moreover, Section 20-3-125 provides that enforcement shall be by petition to the family court to enforce payment of such fees, which enforcement is ordinarily by contempt. We hold that attorney fees awarded in domestic actions are subject to the automatic supersedeas provision of Supreme Court Rule 41, Section 1(A).

The husband was in arrears in his alimony payments for three months at the time of the trial court's order.

The trial judge enumerates several reasons for not holding the husband in contempt for his failure to pay alimony which includes the fact that the wife harassed him at his residence and at his place of work causing him to seek employment outside the state. According to the husband, this change of employment necessitated expenditures which included a $14,000.00 loan.

A person is in contempt of court when he willfully disobeys a court order. *Curlee v. Howle*, 277 S. C. 377, 287 S. E. (2d) 915 (1982). Where a contemner is unable, without fault on his part to comply with a court order, he should not be held in contempt. *Hicks v. Hicks*, 280 S. C. 378, 312 S. E. (2d) 598 (Ct. App. 1984). While a determination of contempt is within the sound discretion of the trial judge, it is subject to reversal where based on a finding that is without evidentiary support or where there has been an abuse of discretion. *Pratt v. South Carolina Department of Social Services*, 283 S. C. 550, 324 S. E. (2d) 97, 98 (Ct. App. 1984). Although this court would be disposed were we sitting as trial judges to hold the husband in contempt, we cannot say that there is no evidentiary support for the trial judge's holding nor will we find that he abused his discretion in refusing to hold the husband in contempt.

Finally, we agree with the wife that the trial court erred

in failing to address the medical bills issue. This issue is remanded to the family court for proper disposition.

Accordingly, the issues of alimony, attorney fees, equitable division and payment of the children's medical bills during the pendency of this appeal are remanded to the trial court for disposition not inconsistent with this opinion.

Affirmed in part, reversed in part and remanded.

BELL and GOOLSBY, JJ., concur.